CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 0 4 2012

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL RAY THORNTON, | Criminal Action No. 7:05-CR-00029 |
| Petitioner, | **MEMORANDUM OPINION** |
| v. | |
| UNITED STATES OF AMERICA, | By: Hon. James C. Turk |
| | Senior United States District Judge |
| Respondent. | |

Petitioner, Michael Ray Thornton ("Thornton"), proceeding *pro se*, brings this action as a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Thornton claims that he was denied effective assistance of counsel at his preliminary hearing and at trial because his lawyers failed to advise him that he could plead guilty without a plea agreement and still appeal his sentence.

Respondent filed a motion to dismiss to which Thornton responded, making the matter ripe for the Court's consideration. Upon review of the submissions of the parties and the underlying criminal record, Case No. 7:05-CR-00029, the Court concludes that Thornton has not shown that he is entitled to relief under § 2255. Accordingly, Respondent's motion to dismiss, which is construed as a motion for summary judgment, must be granted, and Thornton's motion to vacate his sentence under 28 U.S.C. § 2255 must be denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In December 2004, Thornton's wife discovered that he was having sexual intercourse with her 17-year-old daughter (Thornton's stepdaughter). As a result, Mrs. Thornton filed a complaint with the Roanoke County Police Department, which further alleged that Thornton had

committed acts of physical abuse against Mrs. Thornton. Upon investigating, the police discovered that a sexual relationship between Thornton and his stepdaughter began when the girl was sixteen and continued until the investigation. The sexual relationship had resulted in two pregnancies, both of which had been terminated, and DNA evidence from the second abortion revealed that Thornton was the father.

When the police initially came to the Thornton residence in December 2004, Mrs. Thornton told them that Thornton kept multiple firearms in the residence. A search warrant of the residence resulted in the seizure of seven firearms (including two assault rifles), over 6,000 rounds of ammunition, body armor, several books related to homemade munitions, smoke bombs, a black ski mask, and a firing device used to detonate Claymore mines. As a result of these seizures, Thornton was arrested.

On March 24, 2005, Thornton was charged in a two-count indictment with possessing a firearm while a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(e) ("Count One"), and purchasing, owning, or possessing body armor after having been previously convicted of a violent felony, in violation of 18 U.S.C. § 931 ("Count Two"). Thornton had at least three felony convictions prior to the events that led to his arrest in the instant case. Specifically, he had been convicted of: (1) statutory rape in 1986 in the Circuit Court of the City of Roanoke; (2) aggravated sexual battery and attempted rape in 1986 in the Circuit Court of the City of Roanoke; and (3) statutory burglary and maiming in 1973 in the Circuit Court for the County of Bedford.

Thornton pleaded not guilty to the indictment and proceeded to a jury trial. At trial, Thornton testified in his own defense. His defense theory was that the guns and body armor were owned by his wife, not him. According to his testimony, she started buying guns and then

2

reselling them in an attempt to make money. Thornton testified that six of the seized guns were weapons his wife had purchased, and the seventh had belonged to Thornton's cousin, but after the cousin's death, Thornton's uncle gave it to Mrs. Thornton "to go in her collection." Thornton also told the jury that the body armor was something Mrs. Thornton had purchased to resell later. According to Thornton, his wife lied to the police and at trial, testifying that the guns belonged to Thornton, because she "was so upset over [Thornton] having an affair with her daughter" and wanted "to get [him] in trouble." (Dkt. 182, Gov't Mot. to Dismiss, at Ex. D, at 23.) The jury returned a guilty verdict on both counts. (Dkt. No. 50.)

The presentence report prepared by the United States Probation Office determined that Thornton's prior convictions required that he be sentenced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), applicable where a defendant has prior convictions for three violent felonies. The Court agreed, and sentenced Thornton on May 12, 2006 to 204 months in the custody of the Bureau of Prisons as to Count One, to be followed by a 60-month term of supervised release, and to 36 months in custody as to Count Two, to be followed by a 12-month term of supervised release. Both the terms of imprisonment and the supervised release terms were to run concurrently. (Dkt. No. 63, 66.)

Thornton appealed his sentence and, in particular, his classification as an armed career criminal under the ACCA. The United States Court of Appeals for the Fourth Circuit vacated his sentence, and remanded with specific instructions for this Court to consider whether the aggravated sexual battery and attempted rape convictions each qualified as a separate "violent felony." On remand, this Court concluded that those two convictions only qualified as a single violent felony under the ACCA. This Court further reaffirmed its earlier decision that Thornton's conviction for statutory rape under Va. Code Ann. § 18.2-63 constituted a violent

3

felony. (Dkt. No. 123.) Thus, the Court found that Thornton still had three prior convictions for violent felonies. The Court reinstated his sentence (Dkt. No. 125) and entered judgment anew. (Dkt. No. 127.)

On appeal for the second time, the Fourth Circuit determined that the conviction for so-called statutory rape, governed by Virginia's carnal knowledge offense, did not constitute a violent felony under the ACCA as interpreted by Begay v. United States, 553 U.S. 137 (2008).[1] The appellate court therefore reversed and remanded with instructions to re-sentence Thornton without the ACCA enhancement. See United States v. Thornton, 554 F.3d 443 (4th Cir. 2009). On remand for the second time, the revised PSR determined that Thornton's total offense level was 18, and his criminal history category was a II, resulting in an advisory guideline range of 30 to 37 months on Count One and 30 to 36 months on Count Two. (PSR at ¶ 40.) This Court resentenced Thornton to 96 months of incarceration and a 36-month term of supervision. Thornton appealed again, and after a brief remand for the Court to clarify that the imposed sentence was an upward variance (as opposed to a departure), the Fourth Circuit affirmed the judgment and sentence. See United States v. Thornton, 395 F. App'x 29 (4th Cir. 2010).

Thornton timely filed his § 2255 motion. In it, he claims that he was denied effective assistance of counsel at his preliminary hearing and at trial. Although he was represented by different counsel at those two stages, he appears to be arguing that the errors each lawyer committed are related. First, he contends that his counsel at his initial appearance and at his

---

[1] The statutory rape offense for which Thornton was convicted makes it a crime to "carnally know[], without the use of force, a child" between thirteen and fifteen years of age. United States v. Thornton, 554 F.3d 443, 444 (4th Cir. 2009) (quoting Va. Code Ann. § 18.2-63). The Fourth Circuit later determined that convictions under this statute are not categorically crimes of violence because they did not satisfy the requirements as set forth in Begay v. United States, 553 U.S. 137 (2008). Specifically, the Fourth Circuit concluded that violations of the statute were not sufficiently similar to the enumerated "violent" crimes of "burglary, arson, extortion, and crimes involving explosives," either "in kind or in degree of risk." 554 F.3d at 449.

4

preliminary hearing, Melissa Windham Friedman, failed to advise him of "his right to plead guilty without a plea agreement, thereby preserving [his] right to appeal all sentencing issues." (Dkt. No. 178, Pet. at 1.) He alleges that he wanted to appeal the armed career criminal determination and was never told he could plead guilty and nonetheless appeal his sentence. He concedes, however, that prior to trial this Court appointed new counsel at his request. According to Thornton, his new attorney, Chris Kowalczuk, likewise failed to advise him that, "if [he] took the plea bargain that was being offered, he could receive a significant reduction in the 15-year minimum sentence being offered by [his] 'accepting responsibility.'" (Dkt. No. 187 at 5.) Thornton further contends that Mr. Kowalczuk failed to advise him that he could enter a guilty plea while still preserving his right to appeal all sentencing issues.

The relief that he seeks is to be "allowed to plead guilty in front of a different judge" and to be sentenced in a manner that "give[s] him credit for accepting responsibility (and no enhancement for lying)." (Dkt. No. 178, Pet. at 14; see also Dkt. No. 187, Resp. at 10.) The latter appears to be a reference to the two-level adjustment for obstruction of justice that he received for testifying falsely at his trial. (See PSR at ¶ 13.)

The United States filed a Motion to Dismiss on January 18, 2012. (Dkt. No. 182.) Thornton responded on February 6, 2012 (Dkt. No. 187), and the motion is now ripe.

## II. STANDARDS OF REVIEW

### A. Section 2255 Motion

After conviction and exhaustion, or waiver of any right to appeal, the Court can presume that a defendant stands fairly and finally convicted. See United States v. Frady, 456 U.S. 152, 164 (1982). However, prisoners in federal custody may attack the validity of their convictions through a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255.

5

Under § 2255, a prisoner in federal custody may challenge his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, the petitioner must prove his allegations by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

### B. Motion for Summary Judgment

The United States' motion to dismiss must be treated as a motion for summary judgment. The United States submitted materials outside of the pleadings, including a transcript and an affidavit from Thornton's former counsel. Thornton also included a memorandum in support of his Motion to Vacate.[2] The Court may consider a motion to dismiss submitted with additional affidavits or documents outside the pleadings as a motion for summary judgment governed by Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. Pro. 12(d); see also RULES GOVERNING § 2255 PROCEEDINGS, RULE 12 ("to the extent that they are not inconsistent with any statutory provisions or these rules," the Federal Rules of Civil Procedure may be applied in § 2255 proceedings); Blackledge v. Allison, 431 U.S. 63, 80-81 (1977) (noting that summary judgment is an appropriate procedural mechanism to dispose of certain habeas petitions without requiring an evidentiary hearing); Brandt v. Gooding, 636 F.3d 124, 132 (4th Cir. 2011) (Fed. R. Civ. P. 56 "applies to habeas proceedings") (citation omitted).

---

[2] As explained infra, the Court finds that an evidentiary hearing is unnecessary because the claims in the petition can be resolved on the basis of the present record. Rule 8 of the Rules Governing § 2255 Cases in the United States District Courts specifically contemplates that the availability of an evidentiary hearing in a § 2255 petition will be determined by reviewing "the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7." RULES GOVERNING § 2255 PROCEEDINGS, RULE 8(a).

Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the Court views the facts and inferences to be drawn from those facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The Court looks to the affidavits and other specific facts to determine whether there is a genuine issue of fact in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## III. ANALYSIS

In order to prevail on his ineffective assistance of counsel claim, Thornton must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Specifically, Thornton must demonstrate both that his "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. Failure to satisfy either one of these prongs is fatal to the claim and thus there is no need "to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

In order to satisfy the deficiency prong, Thornton must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. This requires proof that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. In fairly evaluating an attorney's conduct, "judicial scrutiny . . . must be highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689. Notably, moreover, Strickland establishes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

7

As to the prejudice prong, Thornton "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 691. The Supreme Court has recently clarified the proper test for prejudice in cases "where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." See Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). To establish prejudice in such a case,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 1385.

In analyzing Thornton's claims, the Court addresses first the claim arising from alleged deficiencies on the part of his first counsel, Melissa Friedman. As to that claim, the Court easily concludes that the deficiencies by his first counsel, if there were any, did not prejudice Thornton because he was subsequently appointed new counsel and had adequate opportunity to plead guilty after appointment of his second counsel. Thus, he cannot show "a reasonable probability that the result of the proceeding would have been different" absent his first counsel's deficiencies. See Strickland, 466 U.S. at 694. It is unnecessary to address, therefore, whether his first attorney was deficient. See id. at 697.

As to Thornton's claim that his second counsel, Christopher Kowalczuk, failed to provide effective assistance, the Court concludes that summary judgment is appropriate and that no evidentiary hearing is needed to resolve this claim. Turning first to the deficiency prong, the Court finds no evidence that counsel in fact failed to inform Thornton of the plea options

8

available to him, aside from Thornton's after-the-fact proclamations that his counsel did not do so. These proclamations, however, do not establish a "genuine issue of material fact" because no reasonable factfinder would credit Thornton's belated and conclusory allegation on this issue. Most importantly, Thornton's claims that his counsel failed to advise him of his options regarding pleading guilty are flatly contradicted by both counsel's affidavit and the attached document that is signed by Thornton, entitled "Confirmation of Advise of Rights" (hereinafter "Confirmation Form"). (Dkt. 182, Ex.C, Kowalczuk Aff. at Ex. A.) Significantly, Thornton admits he signed the Confirmation Form, and does not dispute that he initialed and dated each of the pages of that document.

In pertinent part, the detailed Confirmation Form, which is personalized and makes specific references to Thornton and the facts of his case, states:

> I understand that I have the right to plead guilty, not guilty, no contest, or guilty (<u>Alford</u> plea). My lawyer has fully explained to me the consequences and effects of each of these available pleas and that the decision to enter one of these pleas is entirely up to me. I have advised my attorney that I desire to enter a plea of **not guilty** and to have this case heard by a jury. . . .
>
> . . .
>
> I understand that count one carries a maximum of LIFE imprisonment and that the attorney for the government will seek the maximum sentence upon a finding of guilty by a jury . . . I understand that the charges I face carry a range of punishment as follows: (a) felon in possession of a firearms: imprisonment of FIFTEEN (15) years to life with a mandatory minimum sentence of imprisonment of FIFTEEN (15) years as a result of my three prior convictions for crimes of violence (statutory rape, aggravated sexual battery and attempted rape, statutory burglary) . . .
>
> I have reiterated to my attorney the fact that I emphatically **do not** desire to plead guilty and I, again, reject the written plea agreement which the United States has offered.
>
> . . .

9

> Notwithstanding the fact that my [wife] will testify against me and will provide testimonial evidence that I possessed the firearms in question, I desire to enter a plea of not guilty to each count of the indictment and to proceed to trial because I am not guilty of the offenses charged.
>
> I have read and fully understand the foregoing and have had the opportunity to ask questions of my attorney about all of the information in this document . . . He has answered all of my questions to my complete satisfaction. I am ready for trial and desire to plead not guilty which I understand is my decision and not that of anyone else. Neither my attorney nor any other person, . . . has forced or coerced me into my plea of **not guilty**. My desire to enter a plea of **not guilty** is my decision which I make freely and voluntarily knowing the full consequences of my actions – including the possibility of being found . . . guilty and being sentenced to a lengthy prison sentence up to and including a sentence of life imprisonment.

(Confirmation Form at 3-5.)

Thornton's attempts to distance himself from the document he repeatedly initialed, and admits he signed, are unavailing. He contends that his lawyer did not explain it to him and that he did not know the right questions to ask to preserve and protect his rights, but the record shows otherwise. Indeed, while he repeatedly attempts to downplay his own understanding of the proceedings or his options, Thornton is not as naïve as he suggests. First of all, Thornton has a long criminal history, with convictions dating back to 1972, so he is a repeat offender with significant exposure to the criminal justice system. Moreover, Thornton holds a high school equivalency certificate and the results of the IQ testing and educational background described in his PSR (see PSR at ¶ 37) are consistent with the Court's own observations of him as a person of at least average intelligence, if not above-average intelligence. The record thus fully supports the fact that Thornton is a person who would have had no difficulty in understanding the straightforward information in the Confirmation Form, which is not written in technical legal

10

language or jargon. It is simply not believable that Thornton, who admits he knew he was facing a fifteen-year mandatory minimum sentence, would initial and sign a document of this nature without reading it, or at least asking his attorney what was in it and obtaining a basic understanding of what it said.

The Court concludes that the statements Thornton made in the Confirmation Form by signing it are reliable and persuasive evidence concerning what his attorney told him, and directly refute his claims that he was advised of his plea options. His attorney's affidavit, as well, avers that Thornton's allegation is false. Allegations in a § 2255 motion that are contrary to a defendant's testimony during his Rule 11 colloquy or sentencing hearing are "palpably incredible and patently frivolous or false," and do not require a hearing to resolve. See United States v. Lemaster, 403 F.3d 216, 222-23 (4th Cir. 2005). In this case, of course, there was no plea colloquy, but the Court concludes that Thornton's § 2255 allegations are sufficiently contradicted by the Confirmation Form, which he admits he signed, and by his continued protestations of innocence at trial and at sentencing, as to be "patently false."

Thorton also cannot establish prejudice. Lafler requires him to show in part, that he would have pleaded guilty had he been properly advised. 132 S. Ct. at 1384. Under this test, what matters is Thornton's state of mind and what his options were <u>at the time that he pleaded guilty</u>. Now, with the benefit of hindsight, Thornton knows that he should not have been sentenced as an armed career criminal. But at the time he was making the decision to plead guilty, both he and his counsel believed he would be subject to the fifteen-year mandatory minimum. While Thornton claims that he wanted to be able to appeal being sentenced under the ACCA, the document he signed and the clear state of the law at the time indicated that it was a near certainty that he would be sentenced under the ACCA. Indeed, the Begay case that

11

ultimately led to the determination that Thornton's conviction for statutory rape was not a "violent felony" was not decided until 2008. Thus, although Thornton's counsel made good-faith arguments at sentencing that the ACCA should not apply to Thornton, a published case from the Fourth Circuit had already held that the North Carolina felony offense of taking indecent liberties with a child categorically was a "crime of violence" under the career offender guideline, which analyzed the same language used in the ACCA. See United States v. Pierce, 278 F.3d 282 (4th Cir. 2002). Nor was his counsel deficient for failing to anticipate Begay. See Kornahrens v. Evatt, 66 F.3d 1350, 1360 (4th Cir. 1995) ("the case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law"); United States v. McNamara, 74 F.3d 514, 515-16 (4th Cir. 1996) (attorney not deficient for failing to object on basis of case pending before Supreme Court that might change law since circuit law was settled at time); see also Thornton, 554 F.3d at 446 & n.4 (noting that although Begay postdated this Court's original sentencing decision, the appellate court would apply it on Thornton's direct appeal because it was a new rule that applied to all criminal cases still pending on direct review).

Significantly, moreover, Thornton's response to the United States' motion provides a full view of his thinking at the time he pleaded guilty. He avers that "[w]hen I was considered a career offender,[3] [the] factors [of not receiving a reduction acceptance of responsibility and receiving an obstruction of justice enhancement] didn't make as much difference, because the offense level was artificially jacked up to a higher level." (Dkt. No. 187 at 7.) In that quotation, Thornton properly shows the risk calculus as it existed at the time he elected to proceed to trial.

---

[3] Thornton repeatedly refers to his designation as a "career offender," but he was originally sentenced as an armed career criminal, not a career offender. See United States v. Samuels, 970 F.2d 1312, 1315 (4th Cir. 1992) (discussing differences between the "career offender" provision of the sentencing guidelines, U.S.S.G. § 4B1.4, and the armed career criminal provision, 18 U.S.C. § 924(e)).

12

That is, because he almost certainly faced a fifteen-year mandatory minimum regardless of whether he pleaded guilty or went to trial, the benefits of pleading guilty (the small reduction he might receive for acceptance, for example), were small, but the payoff for going to trial and being found not guilty was huge. Moreover, according to his signed statement, Thornton emphatically acknowledged that he wanted to proceed to trial and understood he was subject to a fifteen-year mandatory minimum.

The court concludes that the record before it plainly shows that Thornton knowingly elected to take his chances at trial. His after-the-fact exhortation that he wanted to be able to plead guilty but retain an ability to challenge his ACCA sentence on appeal, rings hollow, Because he plainly cannot establish prejudice, Thornton's § 2255 motion must be denied.

In short, this Court finds nothing but a "scintilla of evidence" (which come solely in the form of Thornton's after-the-fact, self-serving and conclusory allegations) to support Thornton's claim that he did not knowingly and intentionally choose to proceed to trial, knowing the risks as they stood at the time. This is clearly insufficient to require an evidentiary hearing because no factfinder could, on this evidence, "reasonably find for" Thornton, see Anderson, 477 U.S. at 252, especially in light of the Confirmation Form he signed, which flatly contradicts his current claim. Cf. Lemaster, 403 F.3d at 222-23.

## IV. CONCLUSION

For the stated reasons, the United States' Motion for Summary Judgment is **GRANTED** and Thornton's 28 U.S.C. § 2255 Motion is **DENIED**. An appropriate order shall issue this day.

Thornton is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this Court issues a certificate of appealability pursuant to § 2253(c). A

13
Case 7:05-cr-00029-JCT-RSB   Document 188   Filed 09/04/12   Page 13 of 14   Pageid#: 956

certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Based upon the Court's finding that Thornton has not made the requisite substantial showing of denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If Thornton intends to appeal and seek a certificate of appealability from the Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 60 days of the date of entry of the final order, or within such extended period as the Court may grant pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure.

The Clerk is directed to send copies of this memorandum opinion and the accompanying final order to the petitioner and counsel of record for the respondent.

ENTER: This _4th_ day of September, 2012.

_/s/ James C. Turk_
Senior United States District Judge